FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y
★ MAR 15 2012 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CHARLES COOLEY and
DOLORES COOLEY,

        Plaintiffs,

    -against-

UNITED STATES OF AMERICA,

        Defendant.
-----------------------------------------------------------X

CV 08-1876
(Wexler, J.)

APPEARANCES:

    LASKY & STEINBERG, P.C.
    BY: SCOTT L. STEINBERG, ESQ.
    Attorneys for Plaintiff
    595 Stewart Avenue
    Garden City, New York 11530

    LORETTA E. LYNCH, UNITED STATES ATTORNEY
    EASTERN DISTRICT OF NEW YORK
    BY: JOHN VAGELATOS, ESQ.
        DIANE LEONARDO BECKMANN, ESQ.
        ASSISTANT UNITED STATES ATTORNEYS
    610 Federal Plaza 5TH Floor
    Central Islip, New York 11722

WEXLER, District Judge

    This is a negligence action brought against the Defendant United States of America pursuant to the Federal Tort Claims Act. Plaintiff Charles Cooley seeks recovery for injuries suffered as a result of a fall from an MRI examination table. His wife, Plaintiff Dolores Cooley seeks damages for loss of her husband's services. The case has been bifurcated, and the issue of liability was tried before the Court. This constitutes the Court's Findings of Fact and Conclusions of Law.

1

## FINDINGS OF FACT

A. <u>Plaintiff Charles Cooley and His Employment</u>

    1. Prior to his retirement in 2005, Plaintiff Charles Cooley ("Plaintiff") was employed as a pipefitter at the Northport Veterans Affairs Medical Center (the "VA").

    2. Plaintiff's employment often required that he engage in physically demanding tasks including heavy lifting, climbing and carrying tools.

    3. As of September 20, 2004, Plaintiff had no difficulties in meeting the physical demands of his job at the VA.

B. <u>The Events of September 20, 2004</u>

    4. On September 20, 2004, Plaintiff arrived to work at the VA for a full day of work.

    5. On that same date, Plaintiff was scheduled to undergo an Magnetic Resonance Imaging examination (the "MRI").

    6. The MRI was scheduled to take place in the VA hospital where Plaintiff was employed, but in a building that was approximately a five minute walk from Plaintiff's usual place of employment at the VA.

    7. On September 20, 2004, Plaintiff intended to work and to undergo his MRI examination.

    8. Plaintiff performed his usual workplace duties on the morning of September 20, 2004, and thereafter proceeded to his previously scheduled MRI.

C. <u>The MRI</u>

    9. Plaintiff's September 20, 2004 scheduled MRI was to be performed by Howard Wolfe ("Wolfe").

2

10. Wolfe, who testified at trial, is a CT scan and MRI technician. He was, at relevant times, also an MRI safety manager at the VA and the lead technologist at the VA radiation department.

11. The court finds that Wolfe was a highly experienced MRI technician who has performed thousands of procedures.

12. The court finds that Wolfe testified credibly as to pre-MRI procedures in general and as to the incidents of September 20, 2004, in particular.

13. It was Wolfe's practice, as well as industry procedure, to escort patients to the MRI machine. While escorting patients, the practitioner observes the patient's ability to walk and any particular need for assistance.

14. On September 20, 2004, Cooley arrived at the MRI suite, which is divided into four zones.

15. Zone 1 of the MRI suite is the patient waiting area. Wolfe met Plaintiff in Zone 1 and had the opportunity to observe him complete necessary paperwork.

16. Zone 2 of the MRI suite is a patient dressing area. Zone 3 is a hallway en route to Zone 4, which is the actual MRI examination room.

17. Wolfe escorted Plaintiff through Zones 2-4 of the MRI suite. Plaintiff did not need any assistance in making his way through the MRI suite, and Plaintiff asked for no such assistance. Instead, Plaintiff walked independently through the zones of the MRI suite with Wolfe as his escort.

18. Prior to sitting on the MRI examination table, Plaintiff was directed to empty his pockets and place his belongings, including his wallet, on a chair. That chair was located approximately 12-15 feet away from the MRI examination table.

19. After emptying his pockets, Plaintiff proceeded to the MRI examination table without assistance and without incident.

20. Plaintiff sat on the MRI examination table, which is approximately 20 inches wide, without assistance from Wolfe and without difficulty.

21. After Plaintiff was seated on the MRI examination table, Wolfe told Plaintiff to lie down and place his head on the pillow located on the table.

22. There was a headset for patient use during the MRI examinations that was hanging on a hook on the MRI machine.

23. Just as Wolfe directed Plaintiff to lie down on the examination table, Wolfe reached for the headset on the MRI machine. Wolfe did not leave the room.

24. After being seated on the MRI examination table, and within 1 to 2 seconds of being instructed to lay down, while Wolfe was reaching for the headset, Plaintiff suddenly fell off the examination table.

25. In the short time period in between Plaintiff sitting and then turning to lie down on the MRI examination table, Wolfe did not leave Plaintiff alone in the MRI examination room.

26. Plaintiff did not appear to need assistance in laying down on the MRI examination table and did not request that Wolfe assist him in either sitting on the MRI examination table nor laying down on the table.

## CONCLUSIONS OF LAW

1. This case is governed by the Federal Tort Claims Act, 28 U.S.C. 1346.

2. The FTCA provides for liability pursuant to the law of the state in which the incident occurred. Accordingly, the court looks to the law of the State of New

York to determine whether Plaintiff has established negligence. See 28 U.S.C. 1346(b)(1); Dockery v. United States, 663 F. Supp.2d 111, 118 (N.D.N.Y. 2009).

3. To establish a claim of negligence, a plaintiff must show:(1) that defendant owed plaintiff a duty of care; (2) that such duty was breached and (3) that the breach was the proximate cause of plaintiff's injury. Vumbaca v. Terminal One Group Ass'n L.P., 2012 WL 1377074 *17 (E.D.N.Y. 2012).

4. Where, as here, a plaintiff asserts a claim of negligence under the FTCA, he must prove, by a preponderance of the evidence, that: " (1) the Government owed a duty to [him or her]; (2) the Government breached that duty by its negligent conduct; and (3) as a result of that breach, plaintiff suffered injury." Dockery, 663 F. Supp.2d at 118 (citation omitted).

5. Plaintiff seeks to impose a duty of care beyond that testified to by Wolfe. Specifically, Plaintiff seeks to impose a duty to physically assist each and every MRI patient in lying down on the MRI examination table. The court concludes that no such duty has been established.

6. The only witness to testify as to the duties and procedures of MRI technicians was Wolfe. Wolfe testified, as set forth above, that he observed Plaintiff and escorted Plaintiff throughout the MRI suite. In doing so Wolfe established that it is the duty of an MRI technician to act as a reasonable MRI technician when advising, observing and escorting patients. Wolfe observed that Plaintiff was able to walk and to sit on the MRI examination table independently. His duty as a reasonable MRI technician was undoubtedly met.

7. The court declines to impose any greater duty. Specifically, the court refuses to impose a duty to physcially assist each and every patient in laying down on an MRI examination table, without regard as to whether or not that patient has shown the ability to lie down on his or her own. Plaintiff offered no basis for imposition of such a greater duty in general, and certainly no basis to impose such a duty in this case.

8. Importantly Plaintiff offered no expert testimony in support of any such duty. While the court can envision a duty to assist patients who are not able to walk or sit on the MRI examination table without assistance, the general duty alleged by Plaintiff does not exist.

9. Instead, the court holds that a heightened standard of care to assist a patient can exist only where there is evidence that the particular patient required such special care. See Hardman v. Long Island Urological Assocaites, P.C., 678 N.Y.S.2d 365, 366 (2d Dep't 1988).

10. In Hardman, a case directly on point, the Second Department affirmed a grant of summary judgment to the defendant where plaintiff alleged that negligence led to his fall from an examination table. Affirming the trial court's holding that plaintiff failed to show negligence, the Second Department noted that plaintiff there, as here, proceeded to the examination room and stepped onto the examination table without assistance. There, as here, plaintiff failed to show the need for a heightened level of care and the case was properly dismissed for failure to show negligence. Id.; accord Tober v. Mount Sinai Hosp., 540 N.Y.S.2d 322, 322 (2d Dep't 1989).

11. Plaintiff has failed to establish the duty required to show negligence under the law of the State of New York. Accordingly, Plaintiff cannot establish liability.

12. The Clerk of the Court is directed to enter judgment in favor of Defendant and to close the file in this case.

SO ORDERED.

*S/L. Wexler*

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
May 15, 2012